Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7865 | **DATE** | September 2, 2003 |
| **CASE TITLE** | *Wong v. Boeing* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum and Order, Wong's motion to remand this case to the Circuit Court of Cook County, Illinois [7-1] is granted. China Air's motion to dismiss Boeing's third-party complaint [3-1] is thus stricken as moot. Each party shall bear its own costs incurred in this removal proceeding.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 08 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 03 SEP -5 PM 5:04  FILED FOR DOCKETING | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRACE WONG, as personal representative )
of the estate of LEUNG YUEN MAN a/k/a )
LIANG WAN WEN, deceased, and as )
personal representative of the estate of )
SHIH PENG YU, deceased, )
)
      Plaintiff, )
v. )
)
THE BOEING COMPANY, )
)
      Defendant. )   No. 02 C 7865
_____)
)
THE BOEING COMPANY, )
)
      Third-Party Plaintiff, )
)
v. )
)
CHINA AIRLINES LTD., )
)
      Third-Party Defendant. )

DOCKETED
SEP 8 2003

## MEMORANDUM AND ORDER

Plaintiff Grace Wong, as representative of the estates of her two decedents, originally brought this negligence action in the Circuit Court of Cook County, Illinois against The Boeing Company ("Boeing") arising out of the May 25, 2002 crash of a Boeing-manufactured China Airlines, Ltd. ("China Air") aircraft. Boeing then filed a third-party complaint against China Air seeking indemnification in the event Boeing was found liable to Wong. China Air then removed the entire action to this Court pursuant to 28 U.S.C. § 1441(d) alleging foreign sovereign status under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("the FSIA"). Presently before the Court is Wong's motion to remand this case to the Circuit Court of Cook County,

Illinois on the ground that China Air is not a "foreign state" under the FSIA. For the reasons set forth below, Wong's motion is granted.

I. **Background**

A. **Factual and Procedural History**

On May 25, 2002, China Air flight CI-611, a Boeing 747, departed Taipei, People's Republic of China ("PRC") en route to Hong Kong, PRC. Approximately 35,000 feet over the Pacific Ocean, near the Penghu Islands (roughly midway between the Chinese mainland and Taiwan), the aircraft suffered an unknown structural failure, broke apart and crashed into the sea below. All 225 persons aboard the aircraft died. Among the passengers were Shih Peng Yu and Leung Yuen Man a/k/a Liang Wan Wen. On August 12, 2002, Wong, on behalf of the estates of these two passengers, commenced an action in the Circuit Court of Cook County, Illinois against Boeing alleging that it was negligent in, *inter alia*, its instruction to China Air regarding maintenance and repair of the aircraft, and that this negligence was a cause of the aircraft's crash and the resulting death of Wong's decedents. On October 30, 2002, Boeing filed a third-party complaint against China Air in which it asserted various indemnification claims.

The following day, China Air removed the entire Cook County action to this Court pursuant to 28 U.S.C. § 1441(d) based on its alleged status as an "agency or instrumentality" of the government of the PRC under the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1603(a). On November 15, 2002, China Air filed a motion to dismiss Boeing's third-party complaint pursuant to Fed.R.Civ.P. 12(b)(1). On November 27, 2002, Wong filed a motion to remand the case to the Circuit Court of Cook County, Illinois. On December 5, 2002, this Court entered an order staying briefing on China Air's motion to dismiss pending a ruling on Wong's

motion to remand.

B. **Jurisdictional Facts**

China Air, formed in 1959, is a private corporate entity organized under the laws of the PRC. China Air is over 70% owned by the China Aviation Development Foundation ("CADF"). CADF, established in or around 1988, is a non-profit foundation created under the laws of the PRC. Its establishment was approved by the Ministry of Transportation and Communications, a political subdivision of the PRC. CADF's chartered purpose is to promote the PRC's aviation industry. CADF is a legal entity separate from the PRC and has the capacity to sue and be sued in its own name, contract in its own name, and hold property in its own name.

II. **Discussion**

A. **"Foreign State" Status as Basis for Removal**

China Air timely removed this action pursuant to section 1441(d) of the Judicial Code, which provides:

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without a jury.

28 U.S.C. § 1441(d). Section 1603(a) of the FSIA defines a "foreign state" as "includ[ing] a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Subsection (b) reads:

> An "agency or instrumentality of a foreign state" means any entity --
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by

3

>a foreign state or political subdivision thereof, and
>(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Under this framework, Wong objects to removal arguing that China Air is not a "foreign state" under sections 1603(a) and (b). The scope of this dispute can be narrowed significantly. It is undisputed that China Air is not itself a foreign state or political subdivision thereof; it can qualify as a "foreign state" only if it is an "agency or instrumentality" under § 1603(b). Under § 1603(b), Wong does not challenge that China Air meets the first and third prongs, *i.e.*, that it is a separate legal person and that it is neither a citizen of a State of the United States nor created under the laws of any third country. Therefore, whether China Air is an "agency or instrumentality" turns on whether it falls within the criterion set forth in § 1603(b)(2). Further distilling the inquiry, China Air does not contend, under subsection (b)(2), that it is "an organ of a foreign state or political subdivision thereof," but rather premises its arguments on the subsection's "majority ownership" clause. Thus, the only issue before this Court is whether China Air is an entity, "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b)(2). If it is, it qualifies as a "foreign state" under the FSIA and removal is proper; if not, it is not a foreign state and this Court does not have removal jurisdiction.

### B.     Is China Air an "Agency or Instrumentality"?

As the removing party, China Air bears the burden of establishing this Court's federal jurisdiction. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997). "To remove a case to federal court, a defendant must establish the jurisdictional

requirements with 'competent proof,' evidence which proves to a reasonable probability that jurisdiction exists." *Garbie v. Chrysler Corp.*, 8 F.Supp.2d 814, 817 (N.D.Ill. 1998).

   *1.   Pre-Dole Food*

It is undisputed that the PRC does not itself own a majority of the shares of China Air. Thus, China Air initially argued that since a majority (71%) of China Air's common stock is owned by CADF, which, in turn, is an alleged instrumentality of PRC, China Air is also an instrumentality, albeit indirectly. China Air's "tiered" theory – that it could qualify as an instrumentality so long as its 71% majority owner, CADF, qualified – was, at the time of initial briefing in this matter, a colorable proposition. *See In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 96 F.3d 932 (7th Cir. 1996); *Delgado v. Shell Oil Co.*, 231 F.3d 165 (5th Cir. 2000), *cert. denied,* 121 S.Ct. 1603 (2001); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995); *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C. Cir. 1982). Thus, the bulk of the parties' briefs focused on whether China Air had met its burden of showing both that China Air was majority-owned by CADF, and that CADF itself was an agency or instrumentality of the PRC.

The Supreme Court's recent decision in *Dole Food Co. v. Patrickson,* — U.S. — , 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003), however, fundamentally altered the landscape of this case by squarely rejecting China Air's "tiered" or "indirect ownership" theory. The Supreme Court unequivocally held that a commercial subsidiary of an instrumentality under § 1603(b) is not also entitled to instrumentality status under the FSIA; rather, only direct ownership of a majority of shares by the foreign *state* satisfies the statutory requirement that a majority of the entity's shares or other ownership interest be owned by a foreign state or political subdivision thereof. 123 S.Ct.

at 1662. Put succinctly, "[a] corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares." *Id.* Thus, even if China Air could make the dual showing that it was majority-owned by CADF, and that CADF was an instrumentality of the PRC, such proof, after *Dole Food*, would be insufficient to support a finding that China Air was an instrumentality of the PRC.

   2.   *Post-Dole Food*

In the wake of *Dole Food*, this Court granted both parties leave to file supplemental briefs pursuant to Fed.R.Civ.P. 15(d). China Air, recognizing that *Dole Food* foreclosed its "tiered" instrumentality theory, argues, under the same "majority ownership" clause in subsection (b)(2), that CADF *is* a "political subdivision" (presumably, in addition to being an agency or instrumentality) of the PRC, and since China Air is majority-owned by CADF, it qualifies as an agency or instrumentality. This theory, in the abstract, is unaffected by *Dole Food*. China Air is not asserting that FSIA coverage extends to it because it is majority-owned by an agency or instrumentality of a foreign state, but rather, under the plain language of section 1603(b)(2), because it is majority-owned by a political subdivision of a foreign state. Simply, under section 1603(b)(2)'s "majority ownership" clause, by bumping CADF up from "agency or instrumentality" to "political subdivision," one need only take the statutorily permitted one step down, instead of the *Dole Food*-precluded two, to reach China Air.

Under this argument, China Air still carries the burden of showing that it is majority-owned by CADF, but must now demonstrate that CADF is a "political subdivision" of the PRC. The Court first addresses whether CADF is a political subdivision of the PRC. Unlike "agency or instrumentality," the FSIA does not define "political subdivision." The legislative history to

the FSIA yields that, under 28 U.S.C. § 1603(a), a "political subdivision" was intended to include "all governmental units beneath the central government." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 15-16 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6613. This definition is less than pellucid. However, some of the defining contours of a "political subdivision" under the FSIA emerge by contrasting the more fleshed-out definition of "agency or instrumentality." This comparative approach makes sense because the FSIA treats political subdivisions different than agencies and instrumentalities in several areas, including: liability for punitive damages (28 U.S.C. § 1606), attachment and execution (28 U.S.C. § 1610), and service of process (28 U.S.C. § 1608). The natural, and conclusive, inference from this divergent treatment is that if an entity meets the statutory definition of "agency or instrumentality" of a foreign state, it cannot, at the same time, be a "political subdivision" of that state. *See Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 856 (7th Cir. 2002), *quoting* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:05 (6th ed. 2000) ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.")

Several courts have examined the distinction between a political subdivision and an agency or instrumentality in the context of section 1608 of the FSIA. That provision imposes more burdensome service requirements in cases brought against a political subdivision (*see* 28 U.S.C. § 1608(a)) than in suits against an agency or instrumentality. *See* 28 U.S.C. § 1608(b). In most cases, the entity at issue satisfied both the second and third elements of an agency or instrumentality under section 1603(b). Therefore, the distinction between political subdivision

7

and agency or instrumentality turned on whether the entity was a "separate legal person" under section 1603(b)(1). *See Hyatt Corp. v. Stanton*, 945 F.Supp. 675, 681 (S.D.N.Y. 1996)

In determining whether an entity is a separate legal person, two courts have applied a "core function" test under which an entity is a political subdivision if its central role is governmental in nature, but is an agency or instrumentality if its primary purpose is commercial. *See Segni v. Commercial Office of Spain*, 650 F.Supp. 1040, 1041 (N.D.Ill. 1986); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994). Other courts have invoked a "legal characteristics" test, *i.e.*, an entity is an agency or instrumentality if, under the laws of the foreign state in which it is established, the entity can sue and be sued in its own name, contract in its own name, or hold property in its own name. *See Hyatt Corp.*, 945 F.Supp. at 683-84; *Bowers v. Transportes Navieros Ecuadorianos (Transnave)*, 719 F.Supp. 166, 170 (S.D.N.Y. 1989); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 398, 400 (E.D.Va. 1984); *see also Transaero, Inc.*, 30 F.3d at 156 (Mikva C.J., dissenting).

This Court finds the logic behind the "legal characteristics" test more compelling. As persuasively articulated in *Hyatt Corp.*, this test finds more traction in both the text and legislative history of the statute. 945 F.Supp. at 684. First, it bears emphasizing that the FSIA specifically provides that one of the defining characteristics of an agency or instrumentality is that it is a "separate legal person." 28 U.S.C. § 1603(b)(1). The plain meaning of this definition is an entity that functions legally independent of the state. *Hyatt Corp.*, 945 F.Supp. at 684.

The legislative history to the FSIA confirms that a "separate legal person" under section 1603(b)(1) is "intended to include a corporation, association, foundation, or any other entity which, under the law of the foreign state where it was created, can sue or be sued in its own

name, contract in its own name or hold property in its own name." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 15-16 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6614. The legislative history also lists among the examples of an agency or instrumentality a department or ministry which acts and is suable in its own name." *Id.* The House Report's definition is clear – a "separate legal person" under the FSIA is an entity which acts and is suable in its own name.

Under the so-called "core function" test, an entity is a political subdivision if its central role is governmental in purpose, but is an agency or instrumentality if its primary purpose is commercial. While this distinction may carry some facial appeal insofar as it roughly traces the FSIA's codification of the "restrictive theory" of sovereign immunity – an entity's governmental acts will be protected by immunity but an entity's commercial activities will not – the prospect of extending this line-drawing to the definition of agencies or instrumentalities and political subdivisions finds no support in the FSIA's text or legislative history. Simply, had Congress intended an entity's primarily commercial purpose to be a defining characteristic of agencies or instrumentalities, it would have said so. Indeed, Congress' clear articulation of the significance of an entity's commercial actions elsewhere in the statute, *i.e.* for purposes of immunity, strongly suggests that it had no intention of drawing a similarly dispositive distinction for purposes of defining different organs of foreign states. What we are left with then is Congress' unmistakable, if limited, definition of an agency or instrumentality as an entity which can act and is suable in its own name. *Hyatt Corp.*, 945 F.Supp. at 684; *Transaero*, 30 F.3d at 156 (Mikva, C.J., dissenting).

Apart from the text and legislative history of the FSIA, this Court's conclusion that the *sine qua non* of an agency or instrumentality is its ability to function as a separate legal entity

9

also comports with the Supreme Court's understanding of "a typical government instrumentality." The Supreme Court has observed:

> A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in manner consistent with the enabling law. *The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued.* Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.
> These distinctive features permit government instrumentalities to manage their operations on an enterprise basis while granting them a greater degree of flexibility and independence from close political control than is generally enjoyed by government agencies.

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 624-25 (1983) (emphasis added). Thus, finding that the "legal characteristics" test is firmly moored in the text and legislative history, and consistent with Supreme Court precedent, the Court concludes that a defining attribute of an agency or instrumentality under section 1603 of the FSIA is its capacity to act and to be sued in its own name. Bearing in mind that the FSIA expressly treats differently agencies or instrumentalities, on the one hand, and political subdivisions, on the other, it follows that an elemental characteristic of a political subdivision under section 1603 is its *inability* to act and be sued in its own name.

With these criterion in mind, the Court's analysis here is brief. China Air's sole evidentiary proffer is the affidavit of Ta-Kai Shao, a China Air in-house counsel from 1991 to 1997. CADF is a non-profit civic foundation, established in or around 1988, under the laws of

the PRC. (Ta-Kai Shao Aff., ¶¶ 4, 6.) Its establishment was approved by the PRC's Ministry of Transportation and Communications ("MTC"). (*Id.*,¶ 4.) The affidavit states that *the MOTC* is a political subdivision of the PRC. (*Id.*)

Under PRC law, a foundation's objectives are set forth in its articles of incorporation. (*Id.*,¶ 7.) The objectives of CADF are set forth in Articles 2, 7 and 8 of its Articles of Incorporation. (*Id.*,¶ 8.) Pursuant to Article 2, CADF was formed "to assist the aviation industry of the Republic of China [and] to research and promote relevant activities." (Ta-Kai Shao Aff., *Ex.* B.) Article 7 provides that its purpose "is to organize and utilize the human and property resources of civil institutions, organizations and individuals to assist the development of the aviation industry of the Republic of China." (*Id.*) Under Article 8, CADF's business scope shall be to "assist the development of the aviation industry." (*Id.*) According to the affidavit, "one of the CADF's highest priorities has been the promotion of aviation safety standards." (Ta-Kai Shao Aff., ¶ 8.) Article 10 provides that CADF's Board of Directors is composed of nine directors, five of whom are appointed on the recommendation of the government, one aviation technology expert, one aviation law expert, and the chairperson and general manager of China Air. (*Id.*)

Under Article 5, CADF's revenue stream is generated by income derived from the foundation's operation, donations and "other business incomes." (Ta-Kai Shao Aff., *Ex.* B.) Article 6 roughly details CADF's budgetary process, under which "[t]he executive department shall prepare an annual work project and a budget outline, and present them to the Board of Directors for approval and enforcement accordingly. After the end of each fiscal year, the executive department shall prepare a work report plus final account statements, and have them

audited by an accountant, produce a report, and present them to the Board of Directors for review and recognition." (*Id.*) Within three months at the end of each fiscal year, the CADF is required to submit to the MOTC its operational reports, final account of income and expenses for the preceding year, its budget of income and expenses for the current year, and its detailed list of assets. (*Id.*)

Lastly, and significantly, the affidavit confirms that "CADF is a legal entity separate from [PRC] and has the capacity to sue and be sued in its own name, contract in its own name, and hold property in its own name." Ta-Kai Shao Aff., ¶ 6.

Although CADF is subject to significant organizational control by the MOTC, both in terms of its governing structure and budget, the CADF still functions as a separate legal person. Accordingly, CADF is not a political subdivision of PRC under the FSIA. Rather, it appears to be the type of quasi-commercial governmental entity that would fall within Congress' broad definition of agency or instrumentality. Of course, it does not follow, *ipso jure*, that, if not a political subdivision, CADF must be an "agency or instrumentality." Determining that CADF is a separate legal person only satisfies the first prong of the FSIA's agency or instrumentality definition (28 U.S.C. § 1603(b)(1)), not the second and third (really, only the second) – whether CADF is an organ or majority-owned by the PRC (28 U.S.C. § 1603(b)(2)), and whether CADF is a citizen of the United States or a third country (28 U.S.C. § 1603(b)(3)). Yet, because *Dole Food* has rendered that inquiry moot in this case, the Court declines to pursue it. Also, because China Air cannot demonstrate that CADF is a political subdivision, the Court need not address whether it can show that it is majority-owned by CADF.

## III. Conclusion

Because China Air has not demonstrated that it is an entity "a majority of whose shares or other ownership interest are owned by a foreign state or political subdivision thereof," it is not a "foreign state" under the FSIA and cannot properly remove this action pursuant to 28 U.S.C.§ 1441(d). Accordingly, because this Court does not otherwise have removal jurisdiction, Wong's motion to remand this case to the Circuit Court of Cook County, Illinois [7-1] is granted. China Air's motion to dismiss Boeing's third-party complaint [3-1] is thus stricken as moot. Each party shall bear its own costs incurred in this removal proceeding.

DATE: September 2, 2003

Blanche M. Manning
United States District Judge

13